IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SUZANNE AND MICHAEL KANE, *

       Plaintiffs,                                                 Civil Action No. RDB-17-2268

v.

ZIMMER BIOMET HOLDINGS,
    INC., *et al.*,

       Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiffs Suzanne and Michael Kane (collectively, "Plaintiffs") bring this products liability action against Defendants Zimmer Biomet Holdings, Inc., Zimmer, Inc., and Zimmer U.S., Inc.[1] (collectively, "Defendants" or "Zimmer"), stemming from products inserted into Suzanne Kane during a revision of a total hip arthroplasty. (Am. Compl., ECF No. 25.) Currently pending before this Court is Defendants' Partial Motion to Dismiss the Amended Complaint.[2] (ECF No. 31.) Specifically, Defendants move to dismiss Plaintiffs' claims for negligent misrepresentation (Count V), fraudulent misrepresentation and concealment (Count VI), and punitive damages. (*Id.*) The submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' Motion (ECF No. 31) is DENIED.

---

[1] Defendants' Motion to Dismiss asserts that Plaintiff incorrectly named Zimmer, Inc. as Zimmer Biomet, Inc. and Zimmer U.S, Inc. as Zimmer Biomet U.S., Inc. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of this Court is directed to substitute the appropriate Defendants.
[2] Also pending is Defendants' Partial Motion to Dismiss the Original Complaint. (ECF No. 20.) This Motion is MOOT.

1

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). On June 5, 2009, Plaintiff Suzanne Kane ("Mrs. Kane") underwent a total hip arthroplasty of her right hip. (Am. Compl., ECF No. 25 at ¶ 21.) Two years later, on or around June 14, 2011, she underwent a revision of the total hip arthroplasty. (*Id.*) The revision surgery was performed by Dr. Fran R. Ebert, M.D. ("Dr. Ebert") at Union Memorial Hospital in Baltimore, Maryland. (*Id.*) During the surgery, Dr. Ebert implanted the Zimmer VerSys Fiber Metal Taper Stem and Zimmer VerSys Femoral Head (the "Products") into Mrs. Kane's right hip. (*Id.* at ¶¶ 1-2.) Zimmer, Inc. designed, tested, manufactured, packaged and sold the Products.[3] (*Id.* at ¶ 10.)

Plaintiffs allege that prior to Mrs. Kane's surgery in June of 2011, "Zimmer, Inc. through its written literature, advertisements, the Products' instructions for use, and its sales representatives, including Brian Lorber and/or John Hovis, made false representations to Mrs. Kane's implanting surgeon, Dr. Frank R. Ebert." (*Id.* at ¶ 25.) Specifically, Plaintiffs allege that:

> 119. Defendant Zimmer, Inc., by its Executives, Directors, Staff and/or Research Engineers and/or other employees expressly warranted in its written literature, instructions for use, advertisements, and representation of its representatives and agents, including Brian Lorber and John Hovis, that:

---

[3] Defendant Zimmer U.S., Inc. also sold the Products, and Defendant Zimmer Biomet Holdings, Inc. was the publically traded holding company with wholly owned subsidiaries including Zimmer, Inc. and Zimmer U.S., Inc. (ECF No. 25 at ¶¶ 5-14.)

> a. The hip implant was safe, effective, fit and proper for the use for which it was intended and for future use;
>
> b. The hip implant would not fail during normal usage and would perform for its proper use in the future;
>
> c. The hip implant was not associated with an increased risk of developing corrosion, metal fatigue, or stress fractures;
>
> d. The hip implant was properly designed, manufactured and included adequate warnings about the risks involved in their use;
>
> e. The hip implant used adequate materials that were not susceptible to corrosion, metal fatigue, stress fracture and failure;
>
> f. The hip implant minimized stress concentrations on the neck/stem components;
>
> g. Zimmer, Inc. adequately studied and/or tested the hip implant for the possibility of developing corrosion, metal fatigue, stress fracture and/or failure;
>
> h. The hip implant was inspected for signs of corrosion, metal fatigue, stress fracture and/or faulty manufacture prior to the device's sale, distribution or supply; [and]
>
> i. Zimmer, Inc. had proper quality control procedures in place with respect to the hip implant[.]

(*Id.* at ¶ 119.) Plaintiffs allege that Zimmer did not have sufficient information to make these representations. (*Id.* at ¶ 121.) Further, Plaintiffs allege that at the time the misrepresentations were made Zimmer concealed from Mrs. Kane and her surgeon "the information that was being generated from the post marketing surveillance of the implantation of the devices–specifically that an increased risk of fretting and corrosion was associated with the products." (*Id.*) Dr. Ebert, trained to rely on information from medical device manufacturers, relied on Zimmer's representations and omissions and selected the Products for the surgery. (*Id.* at ¶¶ 124-26.)

Approximately three years after Mrs. Kane's surgery, she began experiencing significant pain and discomfort. (*Id.* at ¶ 30.) Lab results then revealed that she had an elevated serum cobalt level and Dr. Ebert opined that she had trunnionosis, or wear of the femoral head-neck interface which causes corrosion and total hip arthroplasty failure. (*Id.* at ¶ 31.) As a result, she underwent a revision surgery of her right prosthesis on November 11, 2014. (*Id.* at ¶ 32.) Mrs. Kane alleges that as a result of the revision surgery, she has been severely and permanently damaged, has incurred economic losses, and will be required to incur additional medical expenses for future care. (*Id.* at ¶ 76.) Mr. Kane asserts the he has lost the love and affection of his spouse. (*Id.* at ¶ 34.)

On August 9, 2017, Plaintiffs filed suit in this Court based on diversity jurisdiction under 28 U.S.C. § 1332.[4] (ECF No. 1.) On October 19, 2017, Plaintiffs filed an Amended Complaint, alleging negligence (Count I), strict products liability (Counts II-IV), negligent misrepresentation (Count V), fraudulent misrepresentation and concealment (Count VI), and loss of consortium (Count VII) and seeking compensatory, exemplary, punitive, and loss of consortium damages.[5] (Am. Compl., ECF No. 25.) On November 17, 2017, Defendant filed the instant Partial Motion to Dismiss the Amended Complaint, asserting that Plaintiffs' negligent misrepresentation, fraudulent misrepresentation and concealment, and punitive damages claims should be dismissed as a matter of law. (ECF No. 31.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain

---

[4] The parties do not dispute that Maryland law applies to Plaintiffs' state law claims.
[5] Initially, the Plaintiffs also alleged negligence *per se* and breach of implied warranty. (Original Compl., ECF No. 1.)

a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) "require that complaints in civil actions be alleged with greater specificity than previously was required." While a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). The rule "does not require the elucidation of every detail of the alleged fraud, but does require more than a bare assertion that such a cause of action exists." *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Md. 1991). To satisfy the rule, a plaintiff must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). As the United States Court of Appeals for the Fourth Circuit stated in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013), the aims of Rule 9(b) are to provide notice to defendants of their alleged misconduct, prevent frivolous suits, eliminate fraud actions where all the facts are learned after discovery, and protect defendants from harm to their goodwill and reputation. 707 F.3d at 456 (citation omitted).

## ANALYSIS

### I. Negligent misrepresentation claim (Count V)

To state a claim for negligent misrepresentation under Maryland law, a plaintiff must show that:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd v. General Motors Corp.*, 397 Md. 108, 136, 916 A.2d 257 (Md. 2007). "Importantly, a claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply." *Baltimore Cty. v. Cigna Healthcare*, No. 06-1877, 238 F. App'x 914, 921 (4th Cir. June 5, 2007) (citing *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007); *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005)); *Malinowski v. The Lichter Group, LLC*, 165 F. Supp. 3d 328, 338 (D. Md. 2016).

The Defendants first argue that the alleged negligent misrepresentations are not recognized under Maryland law because they are "promissory or predictive in nature." (ECF No. 31-1 at 4-5.) The Defendants cite *200 North Gilmore, LLC v. Capital One, Nat. Ass'n*, 863 F. Supp. 2d 480 (D. Md. 2012) for the proposition that "a promise made with the present intention not to perform is perforce, an intentional misrepresentation, not a negligent one." 863 F. Supp. 2d at 493. In that case, the plaintiff company asserted that the defendant Capital One negligently represented that it would add the plaintiff as an additional insured on an insurance policy and pay it claim proceeds. *Id.* The plaintiff alleged that at the time the

6

defendant's agent made the statement, Capital One inaccurately represented its intention with regard to the proceeds. *Id.* As this Court explained, the plaintiff potentially had a claim for fraudulent, but not negligent, misrepresentation:

> A "negligent misrepresentation claim based on statements promissory or predictive in nature" is not viable "[u]nless the plaintiff puts forward evidence tending to show that the 'promisor' or 'predictor' made the statements with the present intention not to perform...." *Miller v. Fairchild Indus., Inc.,* 97 Md.App. 324, 346, 629 A.2d 1293, 1304 (1993). But, a promise made with the present intention not to perform is perforce, an intentional misrepresentation, not a negligent one, and thus cannot sustain an action for negligent misrepresentation. *Id.* Put another way, [i]n order for a negligent misrepresentation claim based upon a promise of future conduct to be actionable, the party making the representation regarding its future conduct must know, at the time it makes the representation, that it does not intend to carry out the promise. *Heritage Oldsmobile*[*-Imports v. Volkwagen of Am. Inc.,* 264 F. Supp. 2d 282, 291 (D. Md. 2003)]. But, if the party knows the representation to be false at the time it is made, then the claim is one for *fraudulent* misrepresentation and the negligent misrepresentation claim [is converted] into a claim for fraudulent misrepresentation. *Id.* (emphasis in original).

*Id.*

Defendants argue that under this principle, the Defendants' alleged misrepresentations regarding whether the hip implant would be safe, was dangerous, or would cause metallosis, were predictive "because they forecast what would happen when the hip implants were used in subsequent surgeries." (ECF No. 31-1 at 4.) Notably, the Defendants do not cite a case applying this principle in a products liability action or explain why a *person's* intention not to perform can be likened to a person's statement that a product will perform a certain way. Second, Plaintiffs allege that the Defendants made the following representations:

> [T]hat Zimmer, Inc.'s hip joint implant products were safe for use in hip replacement surgery; were fit for their intended purposes; that Zimmer, Inc.'s

7

> hip joint implant products were not dangerous and did not impose any health risks; did not cause metallosis or the release of metal debris because the femoral ball was metal and the cup was polyethylene; and that Zimmer, Inc.'s hip joint implant products would function without defect. Zimmer, Inc. concealed the risk of mixed metals at the junctures which can cause trunnionosis from the implanting surgeons, including Dr. Ebert.

(ECF No. 25 at ¶ 118.) Therefore, the alleged misrepresentations and omissions pertained to the Products as they existed when Dr. Ebert and Plaintiffs were considering using them in Mrs. Kane's surgery and when they were in fact used during the surgery. Accordingly, these statements do not fall within the category of "predictive statements" made "with the present intention not to perform." *200 North Gilmore*, 863 F. Supp. 2d at 493 (quoting *Miller*, 97 Md. App. at 346, 629 A.2d 1293).

Second, Defendants argue that Plaintiffs have not pled a claim for negligent misrepresentation because they "do not identify any statement made by the Defendants, let alone one that is false." (ECF No. 31-1 at 5.) Plaintiffs allege, however, that the Defendants made the above statements in their "written literature, advertisements, the Products' instructions for use," and through their sales representatives, including two specific individuals. (ECF No. 25 at ¶ 25, 118.) Further, the Amended Complaint alleges that the Defendants represented that the hip implant: "used adequate materials that were not susceptible to corrosion, metal fatigue, stress fracture and failure," "minimized stress concentrations on the neck/stem components," and were "inspected for signs of corrosion, metal fatigue, stress fracture and/or faulty manufacture prior to the device's sale, distribution, or supply." (*Id.* at ¶ 119.) Plaintiff alleges that these statements "were, in fact, false" and Zimmer, Inc. made the "misrepresentations and omissions with no reasonable grounds for believing them to be true." (*Id.* at ¶¶ 118, 120.) Accordingly, Plaintiffs have met

8

this element of a negligent misrepresentation claim.

Finally, Defendants argue that Plaintiffs have not alleged "how they justifiably acted in reliance on the alleged false statements."[6] (ECF No. 31-1 at 6.) Here, the relevant inquiry is whether Dr. Ebert relied on the alleged misrepresentations. *See Miller v. Bristol-Myers Squibb Co.*, 121 F. Supp. 2d 831, 839 (D. Md. 2000) ("Under the learned intermediary doctrine, the manufacturer of medical devices . . . has no duty to warn the patient of the risks associated with products used under the supervision of a doctor.") (citations omitted). Defendants assert that the Plaintiffs do not allege that Dr. Ebert in fact read Zimmer's representations in the written literature, instructions for use, or advertisements or in fact heard the representations from a representative. Further, Defendants assert that if he read or heard the representations, Plaintiffs have not pled that Dr. Ebert relied upon them.

Plaintiffs allege, however, that "Zimmer, Inc. through its written literature, advertisements, the Products' instructions for use, and its sales representatives, including Brian Lorber and/or John Hovis, made false representations *to Mrs. Kane's implanting surgeon*, Dr. Frank R. Ebert," and that "Dr. Ebert and Mrs. Kane justifiably relied on Zimmer, Inc.'s misrepresentation . . . and omission." (ECF No. 25 at ¶¶ 25, 29) (emphasis added). Further, Plaintiffs allege that "Defendant Zimmer, Inc. and Zimmer US, Inc. used its distributors and its sales representatives to communicate with the doctors, such as Dr. Ebert and the doctors at Union Memorial Hospital" and "Plaintiff's surgeon was trained to rely and expect

---

[6] Defendants also argue that the Plaintiffs have not pled the second and third elements of a negligent misrepresentation claim, that the Defendants intended that the statement would be acted upon by the Plaintiffs and knew that the Plaintiffs would rely on the statement. Clearly, however, Defendants are in the business of designing, manufacturing, marketing, and supplying products such as those at issue in order to sell them to physicians such as Plaintiffs', and know that representations made in written literature, advertisements, and instructions for use and by sales representatives will be relied upon.

information from medical device manufacturers that he believed was accurate and truthful." (*Id.*at ¶¶ 46, 126.) Therefore, Plaintiffs have met this element of a negligent misrepresentation claim and Defendants' motion is DENIED as to this claim (Count V).

## II. Fraudulent misrepresentation and concealment claim (Count VI)

To state a claim under Maryland law for fraudulent misrepresentation and concealment, a plaintiff must show:

> (1) that the defendant made a false representation to the plaintiff (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Todd v. XOOM Energy Maryland, LLC*, No. GJH-15-0154, 2017 WL 667198, at *5 (D. Md. Feb. 16, 2017) (quoting *Legore v. OneWest Bank, FSB,* 898 F. Supp. 2d 912, 919 (D. Md. 2012))); *see also Airport Square Holdings, LLC v. GCCFC 2007-GG9 Colomary Facilities, LLC*, No. JFM-16-02883, 2017 WL 639230, at *6 (D. Md. Feb. 16, 2017) (reciting the same five elements for fraudulent inducement (citing *Lawley v. Northam*, No. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011))). Because these claims sound in fraud, they must be pled with particularity. *Spaulding,* 714 F.3d at 781. Therefore, Plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). Defendants argue that Plaintiffs have not identified any false statements, let alone under Federal Rule of Civil Procedure 9's heightened pleading standard. (ECF No. 31-1 at 8, 9.) Further, Defendants argue that Plaintiffs do not allege that the

10

Defendants made the statements with the purpose of defrauding the Plaintiff or that Dr. Ebert relied on the statements.

Plaintiffs allege that through Zimmer's written literature, advertisements, the Products' instructions for use, and its sales representatives, Zimmer made the above described misrepresentations concerning the Products' safety and concealed that the Products had an increased rate of fretting and corrosion. Plaintiffs allege that the Defendants knew the statements were false, concealing from Mrs. Kane and her surgeon "the information that was being generated from the post marketing surveillance of the implantation of the devices–specifically that an increased risk of fretting and corrosion was associated with the products." (ECF No. 25 at ¶ 121.) The Plaintiffs also specifically allege that "[i]n 1997, Zimmer failed to disclose accurate information to the FDA" by "downplay[ing] the accurate results of bench testing that demonstrated increased incidents of fretting and corrosion." (*Id.* at ¶ 138.) Further, with knowledge of "predicted failures," the Defendants continued to sell the Products. (*Id.* at ¶ 51.) The statements were made to entice Mrs. Kane's physician and other physicians to use the Products, and as explained above Plaintiffs have alleged that Mrs. Kane and her physician did in fact rely on the misrepresentations. Therefore, Plaintiffs have alleged that the Defendants knew they were making false representations to defraud the Plaintiffs and Dr. Ebert, and the Plaintiffs and Dr. Ebert relied on the representations. Accordingly, Defendants' motion to dismiss Plaintiff's claim for fraudulent misrepresentation and concealment (Count VI) is DENIED.

### III. Punitive damages

Under Maryland law, a plaintiff in a tort action "must prove that a defendant had

11

actual malice in order to obtain punitive damages." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 295 (D. Md. 2005) (citing *Montgomery Ward v. Wilson,* 664 A.2d 916, 930 n. 5 (Md. 1995)). In *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (Md. 1992), the Maryland Court of Appeals held that in a products liability case:

> [T]he equivalent of the "evil motive," "intent to defraud," or "intent to injure," which generally characterizes "actual malice," is actual knowledge of the defect and deliberate disregard of the consequences. Therefore, in order for actual malice to be found in a products liability case, regardless of whether the cause of action for compensatory damages is based on negligence or strict liability, the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect.

325 Md. at 462, 601 A.2d 633; *Jeffries v. Boston Scientific Corp.*, No. RWT-15-3480, 2017 WL 2645723, at *5 (D. Md. June 20, 2017) (citing *Owens-Williams* for the standard for punitive damages); *Myles v. Rent-A-Center, Inc.*, No. JKB-15-300, 2016 WL 3077399, at *4 n. 6 (F. Md. June 1, 2016) (same). Plaintiffs seek "[p]unitive damages for the wanton, willful, and fraudulent acts of Defendants who demonstrated actual malice for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and to deter future similar conduct." (ECF No. 25 at 33.) Defendants argue, however, that aside from this conclusory statement the Plaintiffs have not alleged "that the Defendants' purpose was to deliberately and willfully injure Plaintiffs." (ECF No. 31-1 at 10.)

For the reasons that Plaintiffs have adequately pled a claim for fraudulent misrepresentation, they have adequately alleged that they are entitled to punitive damages. *See Myles v. Rent-A-Center*, No. 15-0300, 2015 WL 4129576, at *3 (D. Md. July 7, 2015) (explaining that after finding that the plaintiffs had plausibly alleged a fraud claim, the "[d]efendants' 'alleged actual knowledge of falsity, coupled with [its alleged] intent to deceive

[Plaintiffs] by means of the false statement, constitutes the actual malice required to support an award of punitive damages'" (quoting *Ellerin v. Fairfax Sav., F.S.B.*, 337 Md. 216, 652 A.2d 1117, 1126 (Md. 1995))). Plaintiffs allege that Defendants knew of a defect with the Products and consciously or deliberately disregarded the foreseeable harm resulting from the defect, i.e. an increased risk of fretting and corrosion. Therefore, the Defendants' motion to dismiss Plaintiffs' claim for punitive damages is denied and Defendants' Partial Motion to Dismiss the Amended Complaint (ECF No. 31) is DENIED.

## CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss the Original Complaint (ECF No. 20) is MOOT and Defendants' Partial Motion to Dismiss the Amended Complaint (ECF No. 31) is DENIED.

A separate order follows.

Dated: August 22, 2018

                                                   /s/

                                               Richard D. Bennett
                                               United States District Judge